IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BEST GLIDE AVIATION SURVIVAL EQUIPMENT, INC., | § § § | No. 1:23-cv-1080-DAE |
| *Plaintiff*, | § § | |
| vs. | § § § § | |
| TAG-Z, LLC, | § § | |
| *Defendant*. | § | |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Tag-Z, LLC's Motion to Dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction and failure to state a claim pursuant to rules 12(b)(2) and 12(b)(6) (Dkt. # 10). After careful consideration of the memoranda and exhibits in support and in opposition to the motion, the Court, for the reasons that follow, **GRANTS** Defendant's Motion to Dismiss under Rule 12(b)(6).

BACKGROUND

This case revolves around the sale of military style P-38 and P-51 can openers, manufactured by and stamped with "U.S. Shelby Co." (the "U.S. Shelby openers" or the "Product"). Plaintiff Best Glide Aviation Survival Equipment, Inc. ("Plaintiff") alleges that U.S. Shelby openers were originally manufactured by Mallin Shelby Hardware, Inc. ("Mallin") until 1983, when the company dissolved.

1

(Dkt. # 6 at 5.)  Since the dissolution of Mallin, Plaintiff alleges that U.S. Shelby openers have been manufactured, distributed, and sold by various entities.  (Id.)

Plaintiff is a Texas corporation that markets and sells military equipment and survival gear.  (Dkt. # 6 at 1, 3.)  Plaintiff alleges that it began selling U.S. Shelby openers through both Amazon and its own websites in 2009.  (Id.)  Plaintiff states it was well known in the community for making such sales and the public has come to associate Plaintiff as a provider of U.S. Shelby openers.  (Id. at 6-7.)

Defendant Tag Z, LLC is a Delaware Limited Liability Company with its principal place of business in Omaha, Nebraska.  (Dkt. # 10 at 6.)  Defendant also sells military equipment.  (Id.)

Defendant filed for, but later withdrew, a trademark application for the U.S. Shelby openers.  (Id. at 10.)  Defendant, through Amazon's Brand Registry Program, then applied to be the sole brand owner and seller.  (Id. at 8.)  Defendant's allegedly fraudulent—and at the time, pending—trademark application was the sole reason, according to Plaintiff, that Defendant was able to achieve brand owner status through Amazon.  (Id. at 23.)  Defendant's brand owner status made it so that Plaintiff, along with all the other can opener sellers, could no longer sell the U.S. Shelby openers through Amazon after August 28, 2017.  (Id. at 6.)  As a result, Plaintiff's sales of the Product have declined markedly.  (Id. at 22.)

With regards to Defendant's contacts with the forum, Defendant's products are accessible to Texas residents through both its own website and through Amazon.  (Dkt. # 10 at 6.)  Defendant has no offices, stores, or employees in Texas, does not claim to specifically market to Texas residents, has no operations in Texas, does not pay taxes in Texas, is not registered to do business in Texas, and does not have an agency for service of process.  (Dkt. #6 at 8–9.)  From April 2022 through October 2023, Defendant made no sales to Texas residents through its website.  (Dkt. # 10 at 6.)  During that same period, Defendant sold 28 orders containing U.S. Shelby openers to Texas residents through Amazon.  (Id.)  It is unclear how many sales Defendant made to Texas residents outside of that time period.

On September 11, 2023, Plaintiff filed its Complaint.  (Dkt. # 1).  Plaintiff filed an Amended Complaint on September 22, 2023.  (Dkt. # 6.)  Plaintiff's Amended Complaint asserts a variety of claims, including: (1) federal false designation of origin/association/endorsement; (2) federal unfair competition/advertising; (3) Texas common law unfair competition (passing off); (4) Texas common law unfair competition (false advertising); (5) Texas common law misappropriation; and (6) Texas common law unjust enrichment.  (Dkt. #6 at 24–26.)  Pursuant to an order granting it an extension, Defendant timely filed a 12(b)(2) and 12(b)(6) Motion to Dismiss for lack of personal jurisdiction and

failure to state a claim on November 13, 2023.  (Dkt. # 10.)   Plaintiff then filed its

Response on November 27, 2023.  (Dkt. #11.)  Defendant thereafter filed its Reply

on December 4, 2023.  (Dkt. # 12.)

LEGAL STANDARD

I.      Fed R. Civ. P. 12(b)(2)

When a nonresident defendant moves to dismiss a suit for lack of

personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a court

must determine whether it has personal jurisdiction over the defendant by "first

determin[ing] whether the long arm statute of the forum state permits exercise of

jurisdiction[,] . . . then determin[ing] whether such exercise comports with due

process." Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993). "The

Texas long-arm statute extends to the limits of the Constitution," and a Texas

court's "inquiry is therefore limited to the reach of the Fourteenth Amendment's

Due Process Clause." Stroman Realty, Inc. v. Antt, 528 F.3d 382, 385 (5th Cir.

2008). "The Fourteenth Amendment allows a court to assert personal jurisdiction

over defendants who have meaningful 'contacts, ties, or relations' with the forum

state. Such contacts can give rise to general or specific jurisdiction." Id. (quoting

Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). However, the Fourteenth

Amendment also "limit[s] the power of a State to assert in personam jurisdiction

4

over a nonresident defendant." <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 413–414 (1984) (citing <u>Pennoyer v. Neff</u>, 95 U.S. 714 (1878)).

Where a defendant has "'continuous and systematic general business contacts' with the forum state," the forum may exercise general personal jurisdiction over the defendant.  <u>Stroman</u>, 528 F.3d at 385 (quoting <u>Helicopteros</u>, 466 U.S. at 415) (finding the Texas district court improperly exercised general jurisdiction over officials from California and Florida who did not have an office in Texas or sufficient contacts with Texas giving rise to general jurisdiction). If a defendant's contacts "are less pervasive, courts may exercise 'specific jurisdiction' in 'a suit arising out of or related to the defendant's contacts with the forum.'" <u>Id</u>. (quoting <u>Helicopteros</u>, 466 U.S. at 415).

The plaintiff bears the burden of proof to demonstrate personal jurisdiction.  <u>Nuovo Pignone, SpA v. Storman Asian M/V</u>, 310 F.3d 374, 378 (5th Cir. 2002); <u>Elly v. Syria Shell Petroleum Dev. B.V.</u>, 213 F.3d 841, 854 (5th Cir. 2000).  Courts in the Fifth Circuit evaluate whether exercise of both general and specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) [W]hether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, 310 F.3d at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). If a defendant's contacts with the forum state are insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment, the court must dismiss the case for lack of personal jurisdiction. Id.

II.    Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a claim for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

<u>ANALYSIS</u>

Defendant's Motion asserts two grounds for dismissal: (1) lack of personal jurisdiction, and (2) failure to state a claim.

I.    <u>Personal Jurisdiction</u>

Plaintiff asserts that this Court has personal jurisdiction over Defendant because it sells or offers to sell the U.S. Shelby openers in Texas, including in this District, through its Amazon storefront.  (Dkt. # 6 at 2–3.)  In its Motion to Dismiss, Defendant contends Plaintiff failed to establish this Court has either general or specific jurisdiction over Defendant.  (Dkt. # 10 at 12.)

Defendant is a Delaware LLC with its principal place of business in Nebraska, so Defendant correctly asserts it cannot be deemed "at home" in Texas for purposes of general jurisdiction.  <u>See</u> <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011). (stating that it is "incredibly difficult" to establish general jurisdiction in forum other than the place of incorporation or principal place of business). There is also no indication that Defendant has "affiliations with [Texas]" that "are so 'continuous and systematic' as to render them essentially at home in [Texas.]"  <u>Frank v. P N K (Lake Charles) L.L.C.</u>, 947 F.3d 331, 336 (5th Cir. 2020) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011)).  Because the only alleged contacts with Texas

arise out of Defendant's minimum of 28 sales to Texas, the contacts are not sufficient to establish that Defendant was essentially at home in Texas.

Defendant then argues that this Court may not exercise specific personal jurisdiction because Defendant lacks purposeful minimum contacts with Texas. (Id.) Alternatively, Defendant argues that, even if it did purposely avail itself of the forum state, Plaintiff's purported injury did not arise from those contacts. (Id. at 15.) Plaintiff contends Defendant's sales to Texas residents through Amazon constitute sufficient contacts to form the basis for this Court to assert specific personal jurisdiction over Defendant. (Id.) Alternatively, Plaintiff requests limited discovery if the Court finds that it has failed to properly allege personal jurisdiction. (Id. at 6).

As mentioned, to establish specific jurisdiction, Plaintiff must first demonstrate Defendant has purposeful minimum contacts with Texas. See Admar Int'l, 18 F.4th at 786. When ascertaining whether a court has personal jurisdiction over a defendant that markets and sells products on the internet, courts "look to the 'nature and quality of commercial activity that an entity conducts over the internet.'" See Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). The defendant must target the forum state by purposefully availing

itself of the opportunity to do business in that state.  Admar Int'l, Inc. v. Eastrock, L.L.C., 18 F.4th 783, 787 (5th Cir. 2021).

Defendant likens the instant case to Admar, 18 F.4th at 787, which held that "[m]erely running a website that is accessible in the forum state does not constitute the purposeful availment required to establish personal jurisdiction under longstanding principles of due process."  Admar, 18 F.4th at 788.  Yet Admar is distinguishable from the present case.  While both the Defendant here and the defendant in Admar had no offices, stores, or employees in the forum state, the defendant in Admar "had not sold a single accused product to a [forum state] resident," had not "engaged in business transactions with forum residents," and was "not involved in sales or shipments to consumers" from Amazon.  Id. at 785, 87.  Id.  The court concluded there was no specific personal jurisdiction because the defendant had not sold a single accused product to a forum resident and it solicits no business there through targeted advertising.  Id. at 787.

Here, on the other hand, Defendant was involved in sales because it sold at least 28 orders containing U.S Shelby openers over Amazon's storefront to consumers located in Texas and seven located in the Western District.  Id.  Even if Amazon shipped the U.S. Shelby openers for Defendant, Defendant still entered into the transactions with Texas consumers, purposefully availing itself of the privilege of doing business in Texas with Texas residents.  (Dkt. # 10, Ex. 1); See

Yeti Coolers, LLC v. Love Deals Inc. No. 1:23-CV-79-RP, 2023 WL 4754479 at *4 (W.D. Tex. July 24, 2023).

This case is similar to Yeti Coolers, LLC v. Love Deals Inc. 2023 WL 4754479 at *4. There, the court exercised personal jurisdiction over a company that sold Yeti tumblers to Texas consumers through Amazon's FBA program, the same program used by Defendant. Id. The court noted that "nearly all district courts to tackle the issue have found that repeated purchases through FBA into a state establishes that state's specific jurisdiction[.]" Id. at 4 (collecting cases). Because, through the Amazon storefront, Defendant repeatedly sold U.S. Shelby openers to customers in Texas, they have "purposefully availed themselves of jurisdiction in Texas." Id.

Defendant's sales of U.S. Shelby can openers in Texas are not "isolated occurrences," as the repeated sales are more than "random," "fortuitous," and "attenuated." See Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 228 (5th Cir. 2012). While Defendant cites Pervasive Software to support its argument that Amazon sales are not sufficient to support personal jurisdiction, the Fifth Circuit relied on factors that are not present here. Id. The Fifth Circuit considered that the defendant's only contact with Texas was an interactive website through which the defendant sold "German tax return preparation," that was only available in the German language. Id. The Court

concluded the software had "little utility of Texas or U.S. taxpayers." Id. For these reasons, the court concluded that the defendant could not purposefully establish contacts with Texas. Id. Here, Defendant has targeted Texas by selling U.S. Shelby openers repeatedly to Texas residents, and there is no indication that the U.S. Shelby openers will not be of utility to Texas residents.

For these reasons, the Court does not see a reason to depart from the existing trend of exercising specific jurisdiction when a company has sold products to forum state consumers using Amazon's FBA program.

Alternatively, Defendant argues that, even if it does have purposeful contacts in Texas, Plaintiff's causes of action do not arise out of the forum-related contacts. (Dkt. # 10 at 14–15.) The second step of a personal jurisdiction analysis requires the lawsuit to arise out of or relate to the defendant's purposeful forum contacts. Bristol-Myers Squibb Co. v. Superior Court, 582 U.S. 255, 262 (2017). Defendant alleges that Plaintiff's claim arises from "purported misrepresentations" to the U.S. Patent and Trademark Office and Amazon, not to Texas residents. (Dkt. # 12 at 4.) On the other hand, Plaintiff argues that its claims also revolve around the misrepresentations Defendant made to the public about the ownership, source or origin, and quality of the goods, and as a result of these misrepresentations, Defendant caused a likelihood of confusion and also barred Plaintiff from selling its openers on Amazon. (Dkt. # 11 at 11.)

11

The principal issue is whether Defendant's sales of U.S. Shelby openers to Texas residents arise or relate to the Plaintiff's claims. Bristol-Myers Squibb Co. v. Superior Court, 582 U.S. 255, 262 (2017). There must be "an 'adequate link between the State and the nonresidents' claims.'" Pace v. Cirrus Design Corp., 93 F.4th 879, 901 (5th Cir. 2024) (quoting Bristol-Myers Squibb, 582 U.S. at 262)). Absent this link, specific jurisdiction would be lacking even with regularly occurring sales to the forum. Id.

Though not binding precedent, the Fifth Circuit recently evaluated whether the district court properly declined to exercise personal jurisdiction over a defendant which sold its products on Amazon. Getagadget, L.L.C. v. Jet Creations Inc., No. 19-51019, 2022 WL 964204, at *4 (5th Cir. Mar. 30, 2022) (per curiam). There, when evaluating whether Plaintiff's claims arose from minimum contacts, the Fifth Circuit noted that "it is important to recall that the gravamen for any action of . . . common law unfair competition is whether the challenged mark is likely to cause confusion." Getagadget, L.L.C., 2022 WL 964204, at *4 (citing Marathon Mfg. Co. v. Enerlite Prod. Corp., 767 F.2d 214, 217 (5th Cir. 1985)). The Fifth Circuit held that, because the Defendant's only sales to the forum had been to plaintiff's counsel, the likelihood of confusion claim could not have arisen from Defendant's forum related sales because plaintiff's counsel was not confused about the origin of the goods, unlike the counsel in Getagadget. Id. But the same

12

logic lends itself to a different conclusion here, where Defendant has sold to customers who would not have known the true origin of the goods.  Defendant has allegedly "deceived its audience," which includes Texas consumers.   Defendant's alleged deception of Texas consumers relates to Plaintiff's claim of false advertising, false designation, and unfair competition claims, which is enough to show a sufficient connection between Defendant's forum contacts and Plaintiff's claims.  See AT&T Mobility LLC v. T-Mobile USA Inc., No. 4:22-CV-00760, 2023 WL 186809 (E.D. Tex. Jan. 13, 2023) (holding that the plaintiff's claims of false advertising, including its false statements on its website, arise out of or relate to Defendant's advertising and targeting of Texas consumers).

Additionally, a key consideration is whether the Plaintiff is a forum resident and claims to have suffered harm in the state. Plaintiff is a Texas corporation with its corporate headquarters in Austin, Texas.  See Bristol-Myers Squibb, 582 U.S. at 262 (finding that the connection between a Plaintiff's claims and the forum were weak when the plaintiffs were not forum residents and do not claim to have suffered harm in the state); Ford Motor Co. v. Montana Eighth Judicial Dist. Court, 592 U.S. 351, 365 (2021) (finding specific jurisdiction partly because plaintiffs were injured by defective cars in the forum state) (Dkt. # 6 at 1.). Plaintiff claims that Defendant engaged in unfair competition when it blocked Plaintiff from selling the U.S. Shelby openers on Amazon, which caused Plaintiff

13

to suffer a "diversion of sales" from Plaintiff to Defendant and the "lessening of goodwill associated with its products." (Dkt. # 6 at 26.) For these reasons, Plaintiff's claims arise out of and relate to Defendant's contacts in the forum.

II.     Failure to State a Claim

Defendant moves to dismiss all of Plaintiff's claims for failure to state a claim. (Dkt. # 10.) The Court will address each count in turn.

A. Count 1: Federal False Statement of Origin/Association/Endorsement

Count 1 of the Amended Complaint alleges that Defendant made a false statement of origin/association/endorsement in violation of Section 43(a) of the Lanham Act, codified at Section 1125(a)(1)(A).

The Lanham Act prohibits "palming off," which involves selling goods under the name of a competitor, or "reverse palming off" which involves selling another's product that has been modified slightly and then labeled with a different name. Roho, Inc. v. Marquis, 902 F.2d 356, 359 (5th Cir. 1990). The goal is to avoid harm to the ultimate purchaser, who is deceived of the true source of the product or service. Id.

A plaintiff must prove five elements to establish false designation of origin: (1) the defendant made a false or misleading statement of fact about its product or service; (2) the statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) the deception was material, in that

14

it was likely to influence consumers' purchasing decision; (4) the product or service is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. Yeti Coolers, LLC v. Mercatalyst, Inc., No. 1:22-CV-01337-DAE, 2024 WL 1216726, at *4 (W.D. Tex. Mar. 21, 2024) (citing Nestle USA, Inc. v. Ultra Distribruciones Mundiales S.A. de C.V., 516 F. Supp. 3d 633, 650–51 (W.D. Tex. 2021)).

Defendant alleges that Plaintiff's allegations are too conclusory. (Dkt. # 10 at 16–17.) Within Count 1, Plaintiff alleges that "Defendant made a false statement of fact in a commercial advertisement." However, it is unclear what "commercial advertisement" Plaintiff refers to.

That said, Plaintiff does not need to allege that a statement occurred in a "commercial advertisement" to state a claim for false statement of origin/association/endorsement under Section 1125(a)(1)(A). Plaintiff only needs to show that it "made a false or misleading statement of fact about its product or service." 15 U.S.C. § 1125. Earlier in the complaint, Plaintiff alleges Defendant's false statements more specifically. Plaintiff states that Defendant falsely claimed ownership to the "US Shelby" mark in its trademark application, even though it did not own the "US Shelby" mark. (Dkt. # 6 at 9–10.) Then, Defendant was able to use its pending trademark application status to crowd out other sellers on Amazon and falsely inherit the number of years it had been selling and the product reviews.

15

(Id. at 10.)  This constitutes a plausible "false statement" made about its product, the U.S. Shelby openers.

Though Plaintiff sufficiently alleges a false statement, Plaintiff does not specifically allege how the statement either deceived or had the capacity to deceive a substantial segment of potential customers, nor does it sufficiently allege how the deception was material or how it was likely to influence consumers' purchasing decision.  See Nestle, 516 F. Supp. 3d 633 (W.D. Tex. 2021) (stating that Plaintiff must plead how the false statements deceived customers and how that deception would be material).  Plaintiff could have alleged facts to support each element, specifically pointing out how customers were materially deceived through Defendant's "hijacking" of the ASINs.  Instead, Plaintiff conclusory states that, "Defendant's statement deceived or has the tendency to deceive a substantial segment of its audience"  and that "Defendant's deception is material, in that it is likely to influence the purchasing decisions by others."  (Dkt. # 6 at 25.)  These conclusory allegations will not be given any weight. See Twombly, 550 U.S. at 555.

For these reasons, Count 1 is dismissed without prejudice, so that Plaintiff may be given an opportunity to amend with more specificity. See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure

16

pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.")

  B. <u>Count 2: Federal Unfair Competition and False Advertising</u>

  Count 2 alleges Federal Unfair Competition and False Advertising in violation of Section 1125(a)(1)(B).  (Dkt. # 6 at 24.)

  A prima facie case of false advertising under Section 1125(a)(1)(B) requires the plaintiff to establish: (1) a false or misleading statement of fact about a product; (2) the statement was deceptive; (3) the deception is material; (4) the product is in interstate commerce; and (5) the plaintiff has been injured or is likely to be injured as a result.  <u>Boltex Mfg. Co., L.P. v. Galperti, Inc</u> 827 Fed. Appx. 401, 406 (5th Cir. 2020).  For a false advertising claim under Section 1125(a)(1)(B), the misrepresentation must occur in  "commercial advertising or promotion."  15 U.S.C.A. § 1125(a)(1)(B).  However, Plaintiff only conclusory states that "Defendant made a false statement of fact in a commercial advertisement about its own or another's product."  (Dkt. # 6 at 24.)  Plaintiff does not identify the commercial advertisement, if any, that included a false or misleading statement. Therefore, the Court dismisses this claim without prejudice and will give Plaintiff the opportunity to allege with more specificity.

### C. Count 3 & Count 4: Texas Common Law Unfair Competition & Federal False Advertising

A trademark infringement and unfair competition action under Texas common law presents essentially "no difference in issues than those under federal trademark infringement actions." Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp., 53 S.W.3d 799 (Tex. App.—Austin 2001, pet. denied) (quoting Zapata Corp. v. Zapata Trading Int'l, Inc., 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ). Therefore, for the same reasons that Counts 1 and 2 fail to state a claim, Count 3 for Texas common law unfair competition and Count 4 for federal false advertising also fail. The Court will dismiss this claim without prejudice and will give the Plaintiff the opportunity to allege with more specificity.

### D. Count 5: Texas Common Law Misappropriation

In Count 5, Plaintiff solely alleges that "Defendant's actions, as described above, constitute Texas common law misappropriation in violation of the common law of the State of Texas." (Dkt. # 6 at 26.)  The elements of a cause of action for unfair competition by misappropriation in Texas are (1) the creation of plaintiff's product through extensive time, labor, skill and money, (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (3)

commercial damage to the plaintiff.  Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 839 (5th Cir. 2004) (citing United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc., 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied).

Plaintiff does not describe or identify facts to support each element within its complaint.  Even within its Response, Plaintiff only conclusory alleges the elements of Texas common law misappropriation without pointing the Court to specific facts to support its claim.  The Court may not accept bare legal conclusions.  Therefore, the Court dismisses Count 5 without prejudice and Plaintiff will be given an opportunity to amend its complaint to allege this count with more specificity.

E.  Count 6: Texas Common Law Unjust Enrichment

In Count 6, Plaintiff again solely alleges that "Defendant's actions, as described above, constitute Texas common law misappropriation in violation of the common law of the State of Texas."  (Dkt. # 6 at 26.)  To state a claim for unjust enrichment, Plaintiff must show that Defendant has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain.  Villarreal v. Grant Geophysical, Inc., 136 S.W.3d 265 (Tex. App.—San Antonio 2004, pet. denied).

Plaintiff again only states conclusory legal allegations and does not allege what benefit Defendant received that would be unconscionable to retain. Therefore, the Court dismisses Count 6 without prejudice and Plaintiff will be given an opportunity to allege this claim with more specificity.

CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  (Dkt. # 10.)  Counts 1 through 6 are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff has until August 19, 2024 to amend its complaint.

Dated: Austin, Texas, July 19, 2024.

_____

David Alan Ezra
Senior United States District Judge

20