UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BEST GLIDE AVIATION SURVIVAL EQUIPMENT, INC., | § § § § § § § § § § § § | No. 1-23-cv-1080-DAE |
| *Plaintiff*, | | |
| v. | | |
| TAG-Z, LLC, | | |
| *Defendant*. | | |

ORDER GRANTING IN PART &
DENYING IN PART MOTION TO DISMISS

Before the Court is Defendant Tag-Z, LLC's ("Tag-Z" or "Defendant") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed November 27, 2024. (Dkt. # 31.) On December 3, 2024, Plaintiff Best Glide Aviation Survival Equipment, Inc. ("Plaintiff" or "Best Glide") filed its response in opposition to the motion. (Dkt. # 32.) Tag-Z filed its reply December 9, 2024. (Dkt. # 33.) The Court finds this matter suitable for disposition without a hearing. After careful consideration of the parties' briefs, the relevant law, and the information contained in the record, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss (Dkt. # 31) for the reasons below.

1

BACKGROUND

This case revolves around the sale of military style P-38 and P-51 can openers, stamped with "U.S. Shelby Co." (the "U.S. Shelby openers" or the "products"). (Dkt. # 29 at ¶ 14.) Plaintiff Best Glide Aviation Survival Equipment, Inc. alleges that U.S. Shelby openers were originally manufactured by Mallin Shelby Hardware, Inc. ("Mallin") until 1983, when the company dissolved. (Id. at ¶¶ 15–17.) Since the dissolution of Mallin, Plaintiff alleges that U.S. Shelby openers have been manufactured, distributed, and sold by various entities. (Id. at ¶ 17.)

Plaintiff alleges it began selling U.S. Shelby openers through both Amazon and its own websites in 2009. (Id. at ¶ 30.) Plaintiff states it was well known in the community for making such sales and the public has come to associate Plaintiff as a provider of U.S. Shelby openers. (Id. at ¶ 39.)

The allegations relate to the use of Amazon Standard Identification Numbers (ASINs) and Amazon's Brand Registry and Transparency Programs. (Id. at ¶¶ 20–21.) Each product listed on Amazon has an associated ASIN, which is a serial number for the web listing associated with each product. (Id. at ¶ 20.) An ASIN is therefore akin to a serial number. (Id.) Amazon's Brand Registry and Transparency Programs are designed to protect specific brands' intellectual property rights as well as consumers. (Id. at ¶¶ 23–25.) The Amazon Brand Registry Program allows a seller to become a brand owner by registering a brand name, registered

2

trademark, and/or trademark application into the program. (Id. at ¶ 23.) Once entered in the program, a brand owner controls both the content of an ASIN and who is listed as a seller on an ASIN. (Id.) By contrast, an ASIN that is generic is not under the control of a brand owner, meaning there is no one seller who controls the listing or who may be listed as a seller. (Id. at ¶ 21.)

Defendant filed for, but later withdrew, a trademark application for "US Shelby." (Id. at ¶¶ 12, 53.) Defendant has also filed trademark applications for "P-38" and "P-51." (Id. ¶ 13.) Plaintiff's opposition to those applications is suspended pending resolution of this case. (Id.) Defendant possesses German trademark registrations for "P-38," "P-51," "US SHELBY," and "US SHELBY CO". (Dkt. # 29 at ¶¶ 56–59.)

According to Plaintiff, Amazon allows sellers who possess foreign trademark registrations to enter the Brand Registry Program, and thus to block sales made in the United States. (Id. at ¶ 23.) In July 2023, Amazon informed Plaintiff that Tag-Z had registered one or more of its marks in the program and thus was now the brand owner for the previously generic ASINs. (Id. at ¶ 44.) Plaintiff alleges that Tag-Z has co-opted the previously generic ASINs, on which Plaintiff was able to sell the U.S. Shelby openers, which has led to a marked decline in its sales. (Dkt. # 29 at ¶ 44–45.)

Plaintiff brings its Third Amended Complaint for (1) federal false designation of origin/association/endorsement; (2) federal unfair competition/false advertising; (3) Texas common law unfair competition (passing off); (4) Texas common law tortious interference with contractual relations; (5) Texas common law tortious interference with prospective business relations; and (6) Texas business disparagement. (Dkt. # 29 at ¶¶ 153–195.)  The Court previously granted Tag-Z's motion to dismiss Plaintiff's First Amended Complaint and allowed Plaintiff leave to amend its complaint.  (Dkt. # 14.)  Defendant now moves to dismiss Plaintiff's Third Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. # 31.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a claim for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## DISCUSSION

Defendant moves to dismiss Plaintiff's claims on the basis that Plaintiff fails to state a claim.  (Dkt. # 31.)  The Court will address each claim in turn.

### A. Count 1: Federal False Designation of Origin/Association/Endorsement

Count 1 alleges federal false designation of origin, association, or endorsement under Section 1125(a)(1)(A) of the Lanham Act.  (Dkt. # 29 at ¶¶ 153–159.)

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)–(B).

The Lanham Act prohibits false description or false designation of origin in two primary ways: (1) false advertising of services; and (2) "palming off," which involves selling goods under the name of a competitor. Roho, Inc. v. Marquis, 902 F.2d 356, 359 (5th Cir. 1990). It also reaches conduct that is economically equivalent to palming off, including "reverse palming off," which involves selling another's product that has been modified slightly and then labeled with a different name. Id. The goal is to avoid harm to the ultimate purchaser, who is deceived as to the true source of the product or service. Id.

When bringing a claim under subsection (a)(1)(A) or (B) of Section 1125, a plaintiff must plead five elements: (1) the defendant made a false or misleading statement of fact about its product or service; (2) the statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) the deception was material, in that it was likely to influence consumers' purchasing decision; (4) the product or service is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. Nestle USA, Inc. v. Ultra Distribruciones Mundiales S.A. de C.V., 516 F. Supp. 3d 633,

6

650–51 (W.D. Tex. 2021) (citing Pizza Hut, Inc. v. Papa Jon's Intern., Inc., 227 F.3d 489, 495 (5th Cir. 2000)); id. at n.11 (identifying these elements as required for a false designation of origin claim, but noting that a majority of courts in the Fifth Circuit apply those elements to claims brought in both sections); Heartbrand Beef, Inc. v. Lobel's of New York, LLC, No. CIV.A. V-08-62, 2009 WL 311087, at *2 (S.D. Tex. Feb. 5, 2009) ("Fortunately, while there appears to be confusion over terminology and code sections, the Fifth Circuit consistently lists five elements to be proven whether the claim arises under subsection (a)(1)(A) or (B), and regardless of what the claim is labeled.").

       The Court finds that, at this stage of litigation, Plaintiff has adequately pled its false designation of origin/association/endorsement claim.  First, Plaintiff has alleged that, by exploiting Amazon's Brand Registry Program loophole, Defendant has been able to gain exclusive control of ASINs previously associated with Plaintiff and other sellers.  In so doing, Defendant has misrepresented that associated reviews should be attributed to Defendant, when they in fact should be attributed to Plaintiff. (Dkt. # 29 at ¶ 66.)  Plaintiff has adequately pled the deception would be material since it can be inferred that customers will be influenced by reviews believed to be associated with Defendant when they are in fact attributable to Plaintiff. (Id. at ¶ 69.)  Further, Defendant does not challenge Plaintiff's assertion that its alleged false statements entered interstate commerce. (Id. at ¶¶ 157, 164.)

Finally, Plaintiff has adequately pled it has been injured by a loss of more than $200,000 due to declining sales caused by the misrepresentations. (Id. at ¶¶ 44–45.) The Court thus **DENIES** Defendant's motion as to Count 1.

### B. Count 2: Federal Unfair Competition/False Advertising

Count 2 alleges federal unfair competition or false advertising in violation of Section 1125(a)(1)(B).[1]

A prima facie case of false advertising under Section 1125(a)(1)(B) requires the plaintiff to establish: (1) a false or misleading statement of fact about a product; (2) the statement was deceptive; (3) the deception is material; (4) the product is in interstate commerce; and (5) the plaintiff has been injured or is likely to be injured as a result. Boltex Mfg. Co., L.P. v. Galperti, Inc., 827 Fed. Appx. 401, 406 (5th Cir. 2020). For a false advertising claim under Section 1125(a)(1)(B), the misrepresentation must occur in "commercial advertising or promotion." 15 U.S.C.A. § 1125(a)(1)(B).

---

[1] Although Plaintiff's Complaint pleads in the alternative, the Court construes the Third Amended Complaint to allege a claim for false advertising as a form of unfair competition. See POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102, 107 (2014) ("The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling."). Relatedly, Defendant does not move to dismiss the unfair competition claim as separate from the false advertising claim. (See generally Dkt. # 31.)

As discussed above, the Court finds Plaintiff has adequately pled the five elements required for a false advertising claim under Section 1125(a)(1)(B). Nestle, 516 F. Supp. 3d at 651, n.11 (noting that the majority of courts in the Fifth Circuit apply the same elements to claims brought under both subsections of Section 1125(a)(1)); Heartbrand Beef, 2009 WL 311087 at *2 ("[T]he Fifth Circuit consistently lists five elements to be proven whether the claim arises under subsection (a)(1)(A) or (B)."). The Court also finds Plaintiff has adequately pled the misrepresentation occurred in a "commercial advertising or promotion." 15 U.S.C.A. § 1125(a)(1)(B). Plaintiff's Complaint pleads that the ASINs are commercial advertisements about the good's designation of origin, association, or endorsement. (Dkt. # 29 at ¶ 161.) For a representation to constitute "commercial advertising or promotion," it must be (1) commercial speech, (2) for the purpose of soliciting business, and (3) sufficiently disseminated to a relevant public audience. El Paso Disposal, LP v. Ecube Labs Co., No. EP-24-CV-97-KC, 2025 WL 1766310, at *4 (W.D. Tex. June 26, 2025) (citing Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996)). Defendant's motion argues that the ASINs are not statements and thus cannot be commercial advertisements. (Dkt. # 31 at 13.) Plaintiff responds that ASINs are not only serial numbers, but the shorthand method of describing a product webpage. (Dkt. # 32 at 4; Dkt. # 29 at ¶ 20.)

Defendant's excluding other sellers from using the ASINs and thereby positioning itself to consumers as the exclusive seller of these Products with reviews which should be attributed to Plaintiff is sufficient to plead a misrepresentation. Better Bus. Bureau of Metro. Houston, Inc. v. Med. Directors, Inc., 681 F.2d 397, 400 (5th Cir. 1982) ("The Act's proscriptions against false representation reaches innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlining an advertisement").  Moreover, that the ASINs—which correspond to the Products and therefore their associated reviews—are identified on the Products' webpage listing is sufficient, at this stage, to plead commercial speech for the purpose of soliciting business.  (Dkt. # 29-2 at 32); AHBP LLC v. Lynd Co., No. SA-22-CV-00096-XR, 2023 WL 139714, at *7 (W.D. Tex. Jan. 9, 2023) ("[T]he representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion.").  Finally, given that consumers can see the associated ASINs on the Products' webpage listing, the Court finds Plaintiff has pled the speech is sufficiently disseminated to the relevant public audience.

For these reasons, the Court **DENIES** Defendant's motion as to Count 2.

### C. Count 3: Texas Common Law Unfair Competition (Passing Off)

A claim for unfair competition under Texas common law presents essentially "no difference in issues" than those under federal law. Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp., 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied) (quoting Zapata Corp. v. Zapata Trading Int'l, Inc., 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ). Therefore, for the same reasons the Court denies Defendant's motion as to Counts 1 and 2, the Court similarly **DENIES** Defendant's motion as to Count 3. Taste of Chengdu, LLC v. Feng, No. 3:23-CV-2050-X, 2025 WL 2098745, at *3 (N.D. Tex. July 25, 2025) (finding that because Plaintiff had plausibly pled federal unfair competition claim, it had also plausibly pled a claim for Texas common law unfair competition); DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc., 434 F. Supp. 2d 445, 462 (S.D. Tex. 2006) (noting that courts agree a false advertising claim under the Lanham Act can support a Texas law unfair competition claim).

### D. Count 4: Texas Common Law Tortious Interference With Contractual Relations

Count 4 alleges a cause of action for Texas common law tortious interference with contractual relations. A plaintiff bringing a claim for common law tortious interference with contractual relations must plead the following elements: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and

(4) caused actual damages or loss." Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Nix v. Major League Baseball, 62 F.4th 920, 934 (5th Cir. 2023), cert. denied, 144 S. Ct. 165 (2023).

Plaintiff's claim fails because the Complaint does not allege the existence of a contract between Amazon and Plaintiff. Plaintiff does so for the first time in its response, referring to an Online Sellers Agreement, under which Amazon provides sellers with online selling tools to sell products in addition to allowing sellers to participate in programs such as the Fulfillment by Amazon (FBR) program. (Dkt. # 31 at 9.) A plaintiff cannot remedy a deficient Complaint by raising allegations for the first time in a response to a motion to dismiss. See In re Enron Corp. Secs., Derivative & ERISA Litig., 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (saying "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss").

In addition to failing to allege the existence of a contract, Plaintiff fails to allege that any contract between itself and Amazon obligated Amazon to allow Plaintiff to sell products under specific ASINs. In the absence of a contract requiring that obligation, Plaintiff cannot allege such a contract was breached. A claim for tortious interference with a contract requires a breach of contract. El Paso Healthcare Ltd. v. Murphy, 518 S.W.3d 412, 421–22 (Tex. 2017) ("To prevail on a claim for tortious interference with an existing contract, [a plaintiff must] present

evidence that [the defendant] induced [a third-party] to breach the contract, and thus interfered with [plaintiff's] legal rights under the . . . contract."). Plaintiff's claim thus fails both for failure to show the existence of a contract and for failure to show that Defendant induced Amazon to breach the contract in such a way that it interfered with Plaintiff's rights under that contract.

For these reasons, Count 4 is dismissed **WITH PREJUDICE**, as Plaintiff has had multiple opportunities to amend with more specificity. See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

### E. Count 5: Texas Common Law Tortious Interference With Prospective Business Relations.

Count 5 of the Third Amended Complaint asserts a claim for Texas common law tortious interference with prospective business relations. To prevail on such a claim, a plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party, (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct, (3) the defendant's conduct was independently tortious or

unlawful, (4) the interference proximately caused the plaintiff injury, and (5) the plaintiff suffered actual damage or loss as a result.  Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923 (Tex. 2013); Nix, 62 F.4th at 934; State Farm Mut. Auto. Ins. Co. v. Misra, No. SA-22-CV-806-JKP-HJB, 2024 WL 289032, at *4 (W.D. Tex. Jan. 25, 2024).

Plaintiff fails to allege facts supporting that Defendant has interfered with a specific prospective contract or client relationship.  To plead a claim for common law tortious interference with a prospective business relationship, a plaintiff must point to a specific potential relationship.  Zhejiang Med. Co. v. Kaneka Corp., No. CV H-11-1052, 2012 WL 12893418, at *4 (S.D. Tex. Aug. 13, 2012) ("A general allegation that the defendant has interfered with the prospective relationships and its customers does not allow the court to infer that the defendant has interfered with any specific contract or client relationship.") (internal alternations omitted) (citing ThermoTek, Inc. v. WMI Enters., LLC, No. 3:10-CV-2618-D, 2011 WL 1485421, at *8 (N.D. Tex. Apr. 19, 2011)); Priority Design & Serv., Inc. v. Plaza, No. SA-19-CV-00058-OLG, 2019 WL 2124677 (W.D. Tex. May 15, 2019), adopted, Priority Design & Serv., Inc. v. Plaza, 19-cv-58, Dkt. # 17.  Moreover, a preexisting business relationship may show a reasonably probability of contractual relations, but it must be an "ongoing contractual relationship."  Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc., No. 3:18-CV-0587-N, 2019 WL 4860959, at *2 (N.D. Tex.

14

Oct. 2, 2019). Plaintiff pleads only that Defendant's actions have generally caused Plaintiff to lose business, which in turn has caused Plaintiff's sales to decline. Plaintiff has not pointed to specific clients or potential clients with whom there was a reasonable probability that the plaintiff would have entered a business relationship with. The Court thus **DISMISSES** Plaintiff's claim **WITH PREJUDICE**.

F. Count 6: Texas Common Law Business Disparagement

Count 6 of the Third Amended Complaint asserts a claim for Texas business disparagement. "To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." Grae v. Alamo City Motorplex, LLC, No. 5:18-CV-664-DAE, 2018 WL 4169311, at *7 (W.D. Tex. July 13, 2018) (citing In re Lipsky, 460 S.W.3d 579, 592 (Tex. 2015)). Additionally, "[t]o support a claim for business disparagement, the published statements must be, at a minimum, defamatory." Rimkus Consulting Grp., Inc. v. Cammarata, 688 F. Supp. 2d 598, 671 (S.D. Tex. 2010) (quoting Granada Biosciences, Inc. v. Forbes, Inc., 49 S.W.3d 610, 616 (Tex.App.—Houston [14 Dist.] 2001, pet. granted), rev'd on other grounds, 124 S.W.3d 167 (Tex. 2003)).

The Third Amended Complaint fails to identify any specific statement that was made about Plaintiff by Defendant, much less one that is defamatory. Plaintiff refers only to its allegations that Defendant made false statements, but it

does not allege any disparaging information about itself published by Defendant. (Dkt. # 29 at 41.) Accordingly, the Court **DISMISSES** Plaintiff's claim **WITH PREJUDICE**.

## CONCLUSION

For the reasons given, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss (Dkt. # 31). Counts 4, 5 and 6 are **DISMISSED WITH PREJUDICE**. Counts 1, 2 and 3 remain.

**IT IS SO ORDERED.**

Dated: August 20, 2025.

_____
David Alan Ezra
Senior United States District Judge